UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD L. HARRIS,<br><br>    Plaintiff,<br><br>  v.<br><br>RAILROAD CONSTRUCTORS, INC.,<br><br>    Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-1206<br>(JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

GALLAGHER, SCHOENFELD, SURKIN, CHUPEIN & DEMIS, P.C.
By:  Nancy C. DeMis, Esq.
25 West Second Street
Media, PA 19063
        Counsel for Plaintiff

BROWN & CONNERY, LLP
By: Joseph G. Antinori, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
        Counsel for Defendant

**IRENAS**, Senior District Judge:

    Plaintiff Howard L. Harris ("Plaintiff") initiated this employment discrimination action against Railroad Constructors, Inc. ("Defendant").  Plaintiff alleges that he was the victim of racial and sexual harassment and retaliation.[1]  Pending before the Court is Defendant's Motion for Summary Judgment.

---

    [1]  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

1

I.

Defendant is engaged in the business of building, repairing and maintaining railroad tracks for industries, railroads and transit systems.[2] (Def's 56.1 Stat. ¶2)[3]  Plaintiff, an African-American male, applied for a position as a heavy laborer with Defendant in November 2006 and began work at the end of December 2006.  (Id. ¶3; Compl. ¶3)

On the first day of work, Plaintiff spent approximately three to four hours reviewing Defendant's policies, including a harassment policy, with Lawrence Wilkins ("Wilkins"), Defendant's acting EEO officer.[4]  (Def's 56.1 Stat. ¶¶5-7)  Plaintiff worked for three weeks in "the yard," Defendant's storage facility. (Id. ¶10)  Following his assignment in the yard, Plaintiff worked at a number of different job sites under the supervision of various foremen.  (Id.)  In March 2007, Plaintiff was assigned to

---

[2] Defendant employs between 6 to 45 employees, depending on the state of the economy.  (Def's 56.1 Stat. ¶1)

[3] References to "Def's 56.1 Stat." are to Defendant's statement of undisputed material facts submitted in support of its Motion.

[4] Defendant's harassment policy prohibits harassment based on race, creed, sex, age or national origin and makes clear that any supervisor, agent or other employee who violates the policy will be subject to disciplinary action, which may include termination.  (Def's 56.1 Stat. ¶9; Def's Ex. 4)  In addition, the policy requires any employee who believes he has been harassed to report the incident to a job supervisor or EEO Officer within 48 hours.  (Def's Ex. 4)

a job site in Philadelphia under the supervision of Larry Dameshek ("Dameshek"). (Id. ¶12)

Plaintiff alleges that on March 13, 2007, Dameshek harassed him, but the exact nature of the incident is in dispute. According to Plaintiff, during a break Dameshek ordered Plaintiff to "come sit on my lap." (Pl's Ctr Stat. ¶11) Plaintiff sat next to him to see what he wanted, but Dameshek again told him to sit on his lap. (Id.) Plaintiff walked away, but Dameshek followed and "kept swinging at my behind," while the other employees laughed. (Id.) Dameshek continued to harass Plaintiff even after he returned to work and allegedly told Plaintiff "I'm going to stick my dick in your ass, you'll like it." (Id.) In addition, Dameshek allegedly made reference to Plaintiff's skin color by telling him that he had "Hershey Kiss ears."[5] (Id.; Compl. ¶23)

Dameshek denied that he asked Plaintiff to sit on his lap, and denied that he had directed any sexual or racial remarks to Plaintiff. (Id. ¶ 24) In his deposition testimony, Dameshek offered his version of the alleged harassment:

---

[5] Plaintiff alleges that he also suffered racial discrimination when a coworker "complained loudly about 'working with them niggers.'" (Pl's Ctr. Stat. of Facts ¶7; Compl. ¶16) Although Plaintiff did not report this incident, another laborer allegedly reported it to Wilkins and field supervisor, Dennis Riggs ("Riggs"). (Pl's Ctr. Stat. of Facts ¶8) Plaintiff alleges that the foreman heard the comment, but in an affidavit submitted with Defendant's Motion, the foreman denies having heard it. (*See* John Smith Aff. ¶7)

3

> I believe we were having coffee break [sic]. I mean you got four or five guys standing around, of course, sex is going to come up. We're construction workers. The subject got onto anal sex. One of the guys looked at another guy and said, oh, that's disgusting. One of the guys said, well, only if it's with a man. So, then, it was, you know, another--ewe, icky.
>
> And so, then, of course, I had to turn around and say, well, you know, it really doesn't matter. A person's asshole is a person's asshole. It don't matter what it's connected to, an asshole's an asshole. And then there was laughing and chuckling and stuff like that. Further on--I think I went on to say that it doesn't make you gay or homosexual, because an asshole is an asshole.

(Def's 56.1 Stat. ¶25)

Plaintiff called Riggs from the job site to complain. (Id. ¶15) Riggs called Plaintiff later that night to discuss the incident. (Id. ¶16) Riggs told Plaintiff not to return to the Philadelphia job site, but instead report to the yard for a meeting.[6] (Id.) Riggs immediately notified Wilkins of the incident. Wilkins instructed Riggs to separate Plaintiff and Dameshek and made sure that Plaintiff would receive the same rate of pay for his work the following day in the yard as he did at the site. (Id. ¶18)

The next day Wilkins met with Plaintiff to discuss the

---

[6] In his Complaint, Plaintiff alleges that Riggs tried to minimize the alleged harassment by telling Plaintiff that he would have to learn to deal with it if he wanted to work at Defendant and suggesting that Plaintiff was not cut out for this kind of work. (*See* Compl. ¶¶ 35-36)

4

incident and informed Plaintiff that he would speak to Dameshek and the other workers. (Id. ¶19) According to Plaintiff, Wilkins said he would include a memo on sexual talk with employees' paychecks. (Id. ¶20) Wilkins also informed the president of Defendant, James Daloisio ("Daloisio"), about the incident and the need for an investigation. (Id. ¶22)

After interviewing both Plaintiff and Dameshek, Wilkins spoke to the four other workers from the Philadelphia job site. (Id. ¶27) Three of the employees reported that they did not hear any inappropriate comments. (Id.) However, John Davis, Plaintiff's brother-in-law, gave an account that was nearly identical to Plaintiff's. (Id.) After his investigation, Wilkins concluded:

> Based on the multiple interviews of individuals present at the Philadelphia work site on 3/13/07 the following has been determined: It is probable that there were statements made that would possibly offend others or that one might not want to be a party to. It is not evident that any comments were directed at any individual. It is not evident that any individual approached anyone and specifically raised objections to the comments. It is not evident that the comments were continued after a request was made to stop. It is not evident that any conversation with any individual was not directly work performance related.

(Id. ¶28)

Defendant took disciplinary action against Dameshek by issuing him a written reprimand, which stated:

> Recently a complaint was made about comments you

>     made to an employee at the Kinder Morgan job site
>     in Phila., Pa.  [Defendant] conducted an
>     investigation and found that you most likely made
>     comments inappropriate to the work place.  As a
>     Supervisor and Company Representative you have to
>     adhere to the standards of appropriate conduct at
>     all times.  This includes preventing
>     inappropriate conduct by all employees under your
>     supervision.  This is a written reprimand for the
>     above described conduct and will be in your file
>     for 1 year.  Any incidents during the 1 year
>     period will move you to the next step in the
>     disciplinary process.

(Id. ¶31)  In addition, Defendant distributed its EEO policy to all management-level employees with their paychecks.[7]  (Pl's Resp. to Def's 56.1 Stat. ¶33; *see also* Wilkins Dep. at 109:3-19) Defendant also discussed its EEO policy under the topic of "Problem with Kidding" at the next foremen's meeting following Plaintiff's complaint.  (Id. ¶34)

On March 22, 2007, nine days after Plaintiff was allegedly harassed, Plaintiff was terminated for "insubordination and threatening behavior."[8]  (Id. ¶41; *see also* Def's Ex. 10) Plaintiff was notified of his termination at the same meeting in

---

[7] According to Daloisio, he directed that the payroll clerk place a copy of the EEO policy in every employee's paycheck. (Def's 56.1 Stat. ¶33)

[8] Defendant advised unemployment compensation authorities that he was terminated for "insubordination and Federal Violence in Workplace Policy."  (Pl's Ctr. Stat. of Facts ¶23)  Defendant told DCR investigators that it meant to report *threats* of violence in the workplace. (Id.)(emphasis added)  Regarding Plaintiff's insubordination, the DCR report noted that Defendant could not provide specific incidents or documentation and could only explain it as a failure to get along with supervisors. (Id.; Pl's Ex. E at NJ DCR 00151)

which he was notified of the conclusion of the investigation into his harassment complaint. (*See* Pl's Ctr. Stat. of Facts ¶21; *see also* Pl's Dep. at 118:21-24)

The circumstances leading to the acquisition of evidence supporting Plaintiff's termination is the subject of dispute. Defendant contends that "[a]fter [Plaintiff] made his complaint about Dameshek, Wilkins began to receive comments from other foremen about problems with [Plaintiff's] work performance." (Def's 56.1 Stat. ¶36) According to Defendant, "[b]ecause [Plaintiff] raised the issue of his interactions with different foremen, Wilkins looked into the matter further" and discovered that he "was not a good fit for our company."[9] (Def's Resp. to Pl's Ctr. Stat. of Facts at 12) According to Plaintiff, documents reporting problems with Plaintiff's work performance were created by Wilkins after Plaintiff reported the incident of sexual harassment. (Pl's Ctr. Stat. of Facts ¶18)

On September 17, 2007, Plaintiff filed a charge with the New

---

[9] According to Daloisio, a collective bargaining agreement ("CBA") provides for a training period of 2000 hours during which Defendant can terminate a new employee without challenge from the Union. (Def's 56.1 Stat. ¶3) However, Defendant has not produced the CBA in the instant action. (*See* Pl's Resp. to Defendant's 56.1 Stat. ¶3)
Daloisio explained that, despite the 2000 hour provision in the CBA, it is Defendant's practice to evaluate a new employee within the first 500 hours. (Def's 56.1 Stat. ¶4) Plaintiff, however, disputes whether this is in fact Defendant's practice, as it has not provided evidence in support of such a practice. (Pl's Resp. to Def's 56.1 Stat. ¶4) Plaintiff was within the 500 hour period when he was terminated. (Def's 56.1 Stat. ¶39)

Jersey Department of Law and Public Safety Division on Civil Rights ("DCR").  Plaintiff's charge was timely cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Following an investigation, the DCR issued a finding of probable cause in favor of Plaintiff on December 26, 2008.  The EEOC issued a Notice of Right to Sue on March 13, 2009.

On March 17, 2009, Plaintiff filed his Complaint in the instant action.  Defendant now moves for summary judgment.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004)

(quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

Plaintiff alleges violations of Title VII and the New Jersey Law Against Discrimination ("NJLAD") for sexual and racial harassment and retaliation.[10]  Plaintiff also alleges a violation of 42 U.S.C. § 1981 for racial discrimination.[11]  The Court will first consider the sexual and racial harassment claims before turning to the retaliation claims.

### A.

Defendant moves for summary judgment on Plaintiff's Title

---

[10] Title VII of the Civil Rights Act of 1964 and the NJLAD prohibit workplace discrimination because of an individual's sex or race and prohibit retaliation for opposing an unlawful employment practice.  *See* 42 U.S.C. § 2000e-2(a)(1), § 2000e-3; N.J.S.A. 10:5-12(a),(d).

An employer within the meaning of Title VII is one who is "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 2000e(b).  Despite its varying numbers of employees, *see supra* note 2, Defendant does not contend that it is not an employer within the meaning of Title VII.

[11] Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  The phrase "make and enforce contracts" is broadly defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

VII, NJLAD, and § 1981 harassment claims arguing that it took prompt and adequate remedial action to prevent and correct the alleged harassment. Defendant therefore contends that Plaintiff failed to make out a *prima facie* case because he cannot demonstrate a basis for employer liability.[12] (Def's Br. in Support at 11)

An employer will be liable for hostile work environment harassment when a plaintiff proves that: (1) he suffered intentional discrimination because of his sex or race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person of the same sex and race, in like position; and (5) a basis exists for employer liability.[13] *Theriault v. Dollar General,* 336 Fed. Appx. 172,

---

[12] The analysis of Plaintiff's sexual and racial harassment claims under Title VII and the NJLAD are "strikingly similar" and therefore will not be separately analyzed. *See Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005); *Hargrave v. County of Atlantic*, 262 F.Supp. 2d 393, 411 n.7 (D.N.J. 2003)(noting that "this Court's analysis of Plaintiff's allegations of sexual and racial harassment applies equally to both her Title VII and NJLAD hostile work environment claims."). In addition, the substantive elements of a § 1981 claim are generally identical to the elements of an employment discrimination claim under Title VII. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).

[13] Since Defendant challenges only the employer liability element of Plaintiff's claims, the Court does not consider the sufficiency of evidence regarding the other elements. In addition, because Defendant moves for summary judgment on Plaintiff's § 1981 claim "for the same reasons as his Title VII and LAD claims," the Court does not separately analyze that claim. (*See* Def's Br. in Support at 19)

174 (3d Cir. 2009); *see also Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds* by *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).

With regard to the fifth element of employer liability, the Third Circuit has explained that "[a]n employer is not always vicariously liable for a hostile work environment." *Hitchens v. Montgomery County*, 278 Fed. Appx. 233, 235 (3d Cir. 2008)(quoting *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293 (3d Cir. 1999). In assessing an employer's liability, "much turns on whether the harassers are supervisors or coworkers." *Andreoli v. Gates*, 482 F.3d 641, 648 (3d Cir. 2007)(citations and internal quotations omitted). If a supervisor created the hostile work environment, the employer is strictly liable for the supervisor's conduct if the supervisor took a tangible employment action against the employee, such as a discharge, demotion or undesirable reassignment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998).

However, if a supervisor created a hostile environment, but failed to take a tangible employment action against the employee, the employer may raise an affirmative defense by showing (1) that it exercised reasonable care to prevent and correct the harassment, and (2) that the employee unreasonably failed to take advantage of preventative or corrective opportunities or to

otherwise avoid harm.[14]  *Ellerth*, 524 U.S. at 765.  Plaintiff was allegedly harassed by his supervisor, Larry Dameshek.[15]  (*See* Compl. ¶¶ 19-22)  Since Dameshek did not take an tangible employment action against Plaintiff, Defendant may raise the affirmative defense in this case.

Although Defendant has put forth evidence of corrective measures it took following Plaintiff's report of harassment, *see supra* pages 5-6, the Court concludes that in light of all the

---

[14]  In its Brief in Support of its Motion, Defendant applies the employer liability standard for coworkers as stated in *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)("An employer will be liable for the harassing conduct of the alleged victim's *coworker* if the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment.")(emphasis added).  Where the harasser is a coworker rather than a supervisor, "there is no presumption of employer liability or accompanying burden on the employer to establish an affirmative defense to liability."  *Id.* at 648.  It is more difficult for an employer to avoid liability when a supervisor is the harasser because, as the Supreme Court explained, "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character, and in this sense, a supervisor always is aided by the agency relation."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998).  The negligent/reckless standard for establishing employer liability is not appropriate here as Dameshek was Plaintiff's supervisor.  *See infra* note 15 and accompanying text.

[15]  There is no dispute that as a track foreman, Dameshek was a supervisor of Plaintiff and not his co-worker.  *See* Dameshek Dep. at 10-13 (stating that his job as track foreman requires him to instruct the laborers about what to do, supervise and evaluate their work performance); Harris Dep. at 67:7, 68:23 (referring to Dameshek as Plaintiff's "boss" and Plaintiff's "foreman."); Def's Br. in Support at 14 ("[Plaintiff] never again worked with Dameshek as [sic] after his assignment to the yard and he was placed on another job assignment with a *different supervisor*.")(emphasis added).

circumstances Defendant's response to Plaintiff's complaint is ultimately unreasonable.  The record demonstrates that Defendant's investigation of Plaintiff's complaint is what led to an investigation into Plaintiff's work performance; indeed, Plaintiff was notified of his termination at the same meeting in which he was notified of the outcome of the investigation into his complaint.  Defendant's basis for terminating Plaintiff is unclear and suspicious.[16]  For the purposes of this Motion, the Court concludes that Defendant cannot meet prong one of the affirmative defense because a reasonable fact-finder might determine that Defendant's response included terminating Plaintiff without a clear reason supported by sufficient documentation.

Furthermore, Defendant cannot meet the second prong of the affirmative defense as Plaintiff did not unreasonably fail to take advantage of any preventative or corrective opportunities.  Plaintiff complied with the reporting procedure in Defendant's harassment policy by immediately notifying a supervisor and fully participated in Defendant's investigation.  There is no evidence which would support a conclusion that Plaintiff failed to take advantage of any preventative or corrective opportunities.

Defendant has not met its burden of establishing an affirmative defense to employer liability.  Accordingly,

---

[16]  *See supra* notes 8-9 and accompanying text.

Defendant's Motion will be denied as to Plaintiff's racial and sexual harassment claims under Title VII, the NJLAD, and § 1981.

**B.**

To establish a *prima facie* case of retaliation under Title VII or the NJLAD, a plaintiff must prove that (1) he engaged in protected activity, (2) an employer took an adverse action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse action. *Wilkerson v. New Media Tech. Charter School, Inc.*, 522 F.3d 315, 320 (3d Cir. 2008); *Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81, 125 (2008).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to present a non-retaliatory reason for the challenged employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's articulated reason is a pretext for retaliation. *See id.* at 804. In order to discredit the employer's articulated reason, a plaintiff must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d

Cir. 1994). In doing so, a plaintiff may rely on direct or circumstantial evidence, such as "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation. *Shaner v. Synthes*, 204 F.3d 494, 503 (3d Cir. 2000)(quoting *Fuentes*, 32 F.3d at 764-65).

Defendant moves for summary judgment arguing that Plaintiff cannot establish that Defendant's proffered reason for terminating Plaintiff was pretextual. According to Defendant, Plaintiff was terminated because of his poor work performance and poor attitude, and Plaintiff has no evidence upon which a fact-finder could conclude that such an explanation is unworthy of credence. (Def's Br. in Support at 18-19)

The Court finds that Plaintiff has presented sufficient evidence to support a *prima facie* case of retaliation and a conclusion that a discriminatory reason was a motivating cause of Plaintiff's termination. Plaintiff engaged in protected activity by reporting alleged harassment to his employer and was terminated within nine days of his complaint. Plaintiff was notified of his termination at the same meeting in which he was notified of the outcome of the investigation into his complaint. This time frame is "unusually suggestive" of an improper motive. *See Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 302 (3d Cir. 2007).

As discussed *supra* section III.A., the record before the

15

Court demonstrates that the investigation into Plaintiff's complaint is what led to an investigation into Plaintiff's work performance.  As Plaintiff explains, "[n]o supervisor had complained about [Plaintiff] or disciplined him and no effort was made to assess [Plaintiff] prior to his complaint about unlawful harassment."  (Pl's Opp. Br. at 8)  Wilkins conceded in deposition testimony that prior to Plaintiff's complaint he had not received any complaints about Plaintiff's work over the prior two and a half months.  (Pl's Ctr. Stat. of Facts ¶19)  In addition, Plaintiff points to the fact that two reports of Plaintiff's alleged poor work performance do not include creation dates and a third refers to events that occurred weeks after Plaintiff's alleged workplace misconduct.  (*See* Wilkins' Dep. Exs. 9-11)

Viewed in the light most favorable to Plaintiff, the evidence raises a genuine issue of material fact about whether Defendant had a retaliatory motive for terminating Plaintiff.[17]  Accordingly, Defendant's Motion will be denied as to Plaintiff's retaliation claims.

---

[17]  The parties argue whether the DCR finding of probable cause can be considered by this Court in deciding the present Motion.  (*See* Pl's Br. in Opp. at 5; Def's Reply at 7-12)  The Court need not consider this issue as it finds that Plaintiff has adduced sufficient evidence apart from the DCR probable cause finding to withstand summary judgment.

**IV.**

For the reasons stated above, Defendant's Motion for Summary Judgment will be denied. An appropriate Order accompanies this Opinion.

Dated: December 7, 2010

                                        s/Joseph E. Irenas
                                  **JOSEPH E. IRENAS, S.U.S.D.J.**